AYRES, Judge.
This is an action for damages allegedly arising out of an intentional tort upon plaintiff by Gene McIntosh, employed as a bouncer at the Red Dog Ballroom on Dittco Road near Monroe. From a judgment in plaintiff’s favor for $5,000.00 plus special damages of $685.20 against McIntosh and William M. Smith, owner of the ballroom and employer of McIntosh, the latter prosecutes a devolutive appeal.
The damages sought allegedly resulted from an altercation between plaintiff and defendant McIntosh on the night of October 24, 1971. Plaintiff arrived about midnight, paid his admission, or cover charge, and entered the ballroom, sometimes referred to as lounge. During the course of his stay plaintiff consumed a large quantity of intoxicating liquor although he claimed to have maintained control of his faculties.
Plaintiff’s version of the altercation may be briefly stated. Some minutes before the establishment was to close at 4:00 a. m., plaintiff was standing in the foyer of the club near a metal railing separating an entrance door from an exit door. Both doors were of plate-glass construction. While so standing, McIntosh apparently decided to eject plaintiff from the premises, whereupon McIntosh rushed toward plaintiff exclaiming, “You have been asking for it all night,” and proceeded to grab plaintiff, lifting him up and throwing him across the metal railing. Plaintiff’s head struck some object and he was stunned. On arising, he inquired of McIntosh what he had done to warrant such treatment, whereupon McIntosh again grabbed plaintiff, lifted him up, and threw him through the plate-glass door. Plaintiff was rendered momentarily unconscious and his body sustained several cuts and lacerations. While lying .on his back outside the door in a semiconscious state and bleeding, McIntosh again grabbed plaintiff and struck a hard blow with his fist to plaintiff’s face. Plaintiff was again rendered unconscious. Thereupon, a woman present in the lounge, assisted by some men, placed plaintiff in her automobile and took him to the St. Francis Hospital in Monroe. En route plaintiff momentarily regained consciousness but again lapsed into unconsciousness.. Plaintiff was admitted to the hospital in an unconscious state, in which condition he continued until treatment began in the emergency room.
Defendant Smith contends plaintiff, on arrival at his premises, was already in a highly intoxicated condition; that he became obnoxious and unruly, because of which he was requested to leave the premises, but, notwithstanding that this request was frequently repeated, plaintiff refused to comply. Appellant also claims that plaintiff engaged in a scuffle or encounter with another patron in the ballroom whereupon he was asked to leave and was, in fact, escorted by McIntosh to the door where an altercation occurred between plaintiff and McIntosh. Smith contends that his employee did not shove, push, or throw plaintiff through the plate-glass door but that, in the struggle, plaintiff tripped or fell backward while fighting with McIntosh. It was accordingly asserted that plaintiff was the aggressor in the affair and that McIntosh was justified in using such “reasonable force” as was necessary to eject plaintiff from the premises.
The trial court, after hearing both versions of the affair, resolved the factual issues in plaintiff’s favor. Although the evidence is conflicting and no reasonable basis exists by which it can be reconciled, we find no justifiable basis upon which we can, with any degree of certainty, disagree with the trial court’s findings.
Nor do we find any basis for defendant’s claim that McIntosh was not act *248 ing within the course and scope of his employment at the time plaintiff sustained the injuries of which he now complains. McIntosh was hired as a bouncer whose duty it was to eject patrons of defendant Smith’s business from the ballroom when in the opinion of the bouncer such course was warranted in preserving order. According to Smith’s testimony, McIntosh was thus pursuing the duties of his employment when plaintiff sustained his injuries.
As a result of the injuries sustained, plaintiff was confined to the hospital for a period of two days and thereafter compelled to remain at home, largely confined to bed for approximately a month. Following a period of approximately a month-and-a-half of recuperation, plaintiff continued to suffer headaches and pain, on account of which his inability to work continued. He remained under the care and treatment of Dr. F. E. McCarty until December 16, 1971.
One of the injuries sustained by plaintiff was a deep cut approximately three-and-a-half inches long across the triceps muscle of his left arm. This wound healed slowly, became infected, and required treatment through antibiotics and medication for pain. Numbness was experienced in the area of the wound and this numbness persisted to the date of trial, almost two years following the attack. The triceps muscle was almost severed. The scar, extending approximately half way around the upper arm, remains clearly visible. Another injury was a two-inch laceration on his right cheek. This healed without complications although a facial scar remains. To the back of plaintiff’s head there remained a scar two inches in length, permanent in nature, protruding approximately one-eighth of an inch above the natural surface. Plaintiff sustained another scar to his mouth as a result of having been thrown through the plate-glass door.
The doctor expressed an opinion that plaintiff suffered a brain concussion, Plaintiff’s mother corroborated him with respect to the continuation of his severe headaches, nervousness, and dizziness, which she claimed continued to the date of trial. These, plaintiff testified to have never experienced prior to the incident with which we are now concerned. Pain relievers were prescribed for plaintiff’s headaches, for dizziness, and for nervousness. When seen by the doctor on February 7, 1972, the doctor noted that plaintiff, as of that date, complained of headaches and dizziness.
Much discretion is vested in the trial court in assessing damages in personal injury cases. It is only when there has been an abuse of that “much discretion” that an appellate court is warranted in altering an award made by a trial court. From our review of the record of the injuries sustained and pain endured, as indicated hereinabove, we find no basis for concluding that the award was so excessive as to justify our interference.
For the reasons assigned, the judgment appealed is affirmed at defendant-appellant’s costs.
Affirmed.